**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WILLIAM J. MCKINNEY,<br>*Plaintiff*,<br><br>v.<br><br>WARDEN BURGOS, DEPUTY WARDEN SOLEY, DR. WOLF,<br>*Defendants.* | No. 3:26-cv-1501 (OAW) |

## INITIAL REVIEW ORDER

Self-represented Plaintiff, William J. McKinney, a sentenced inmate at Cheshire Correctional Institution ("Cheshire") filed a complaint under 42 U.S.C. § 1983 alleging that Department of Correction ("DOC") employees: Warden Burgos, Deputy Warden Soley, and Supervising Psychologist Dr. Wolf, violated his rights under the constitution. ECF No. 1.[1] The day after he filed his initial complaint, Plaintiff filed a second complaint, ECF No. 4 (hereinafter, the "complaint"). The operative complaint is identical to the initial one except that it contains one additional exhibit. *See id.* at 12. Plaintiff seeks damages as well as declaratory and injunctive relief.[2] Plaintiff also filed a motion for a temporary restraining order, ECF No. 7, and two declarations. ECF Nos, 14, 15.

[1] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (first citing *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005); and then citing Fed. R. Evid. 201(b)). The publicly-available DOC website shows Plaintiff was sentenced on August 28, 2019. *See* Department of Correction: Inmate Information, available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=231828 (last visited Nov. 5, 2026).

[2] Thus, the court construes Plaintiff's complaint to sue Defendants for damages in their individual capacities only, as any official-capacity claim for damages is barred by the Eleventh Amendment, *see, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985), and to sue Defendants for declaratory and injunctive relief in their official capacities only, as "[a] plaintiff may not obtain injunctive relief against a state official in her individual capacity." *Taylor v. Dorantes*, No. 19CV01350(JCH), 2019 WL 13293562, at *4 (D. Conn. Oct. 16, 2019)

The Prison Litigation Reform Act requires federal courts to review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion thereof, which is frivolous or malicious, which fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune therefrom. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b). The court has conducted an initial review of the allegations in the complaint and determined that Plaintiff has failed to state a plausible claim for relief. As such, all claims are dismissed but without prejudice to Plaintiff filing and amended complaint on or before **December 7, 2026.** Likewise, Plaintiff's motion for a temporary restraining order is denied but without prejudice to renewal.

## I. ALLEGATIONS[3]

Plaintiff has a mental health condition which makes it unsafe for him to have a cellmate. ECF No. 4, at 7. Throughout nearly ten years of incarceration, Plaintiff has lived alone. *Id.* On August 3, 2026, Deputy Warden Soley directed an officer to assign Plaintiff a cellmate. *Id.* at 4. Plaintiff refused housing with a cellmate and was placed in segregation. *Id.* Upon being discharged from segregation on August 12, 2026, Plaintiff was informed that Warden Burgos would no longer allow him to live alone. *Id.* at 5. As such, Plaintiff was required to either live with another inmate or return to segregation. *Id.* Plaintiff began living with a cellmate but was subsequently sent back to segregation for

(first citing *Walker v. Wright*, No. 17-CV-425 (JCH), 2018 WL 2225009, at *8 n.6 (D. Conn. May 15, 2018); and then citing *Marsh v. Kirschner*, 31 F. Supp. 2d 79, 80 (D. Conn. 1998)).

[3] All factual allegations are drawn from the complaint and accepted as true for purposes of this initial review.

reasons not apparently related to the present dispute. *Id.* at 5-6. When Plaintiff was again discharged from segregation on September 6, 2026, he was informed that he would have a new cellmate. *Id.* at 6. Out of fear for his safety, Plaintiff refused housing with a new cellmate and returned to segregation. *Id.*

On September 10, 2026, Warden Burgos told Plaintiff that he had reviewed Plaintiff's single-cell status paperwork and that Dr. Wolf had decided Plaintiff did not need single-cell status. *Id.* at 6-7. Warden Burgos also told Plaintiff that Deputy Warden Solely verified Plaintiff did not have single cell status at Bridgeport Correctional Center ("BCC").[4] *Id.* at 6. Dr. Wolf told Plaintiff that because the director of mental health did not allow mental health single cells, she could not support Plaintiff being housed alone even if he needed it. *Id.* at 7. Dr. Wolf also told Plaintiff that she would submit a request to Cheshire administration for Plaintiff to be housed alone for two weeks and then transferred to the county jail for the last six months of his sentence. *Id.*

Plaintiff was placed on temporary single-cell status and informed he had two weeks to find a cellmate, and if he did not, one would be found for him. *Id.* Plaintiff told Warden Burgos he had been housed alone for almost ten years and that he has a mental health condition that is exacerbated by living with another inmate, and specifically, that living with another inmate causes him to hurt himself and others. *Id.* at 7. In response, Warden Burgos reiterated that Plaintiff had two weeks to pick a cellmate. *Id.* Plaintiff told Deputy Warden Soley and Dr. Wolf the same information he told Warden Burgos and all three defendants reviewed Plaintiff's paperwork. *Id.* at 7-8.

---

[4] It appears that Plaintiff was housed at BCC prior to being transferred to Cheshire. *See* ECF No. 14, at 12.

Plaintiff attaches two documents to the complaint. *Id.* at 11, 12. The first is a segregation completion and general population transition plan which appears to have been made by Cheshire on September 20, 2013, with a goal "to help [Plaintiff] successfully transition to general population and to continue to improve his overall behavioral control as well as to ensure comprehensive discharge planning to promote success in the community." *Id.* at 11. Citing Plaintiff's "history of significant social impairment," as well as his "self injurious and parasuicidal behaviors which is exacerbated when he is made to cohabitate," and his "acute anxiety and behavioral dyscontrol when confined with others," the plan recommends that upon completing the segregation program Plaintiff "be kept on a single cell status," and "continue to be evaluated and followed by mental health professionals," and that he continue "to be afforded comprehensive discharge planning" in anticipation of his expected end of sentence, which at that point was scheduled for February 17, 2014. *Id.*

The second document is a mental health and behavioral management plan which appears to have been made by BCC and has an effective date of October 16, 2017. *Id.* at 12. This plan notes that Plaintiff "repeatedly has expressed thoughts of suicide and self-injury and has engaged in self-injurious behavior [and] has a significant disciplinary history . . . including for assaulting staff, threatening, and self-mutilation," and provides, among other things, that "[w]hile at BCC, [Plaintiff] will be housed in a single cell." *Id.*

The court acknowledges that Plaintiff may not rely on exhibits in lieu of alleging facts in the complaint to state a claim against Defendants. *Pires v. Gallagher*, No. 24-CV-1168 (SFR), 2025 WL 2053411, at *3 (D. Conn. July 22, 2025) (first citing *Rahim v. Barsto*, No. 22-CV-619 (MPS), 2022 WL 2704102, at *5 (D. Conn. July 12, 2022); and

then citing *Walker v. Pastoressa*, No. 22CV00997HGLGD, 2022 WL 3716742, at *5 (E.D.N.Y. Aug. 29, 2022)). Nevertheless, it has reviewed the attached transition and behavioral management plans and determined that neither plan is operative with respect to Plaintiff's current term of incarceration at Cheshire. *See* ECF No. 4, at 11, 12.

## II. DISCUSSION

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citing 42 U.S.C. § 1983). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The Supreme Court of the United States has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Deliberate indifference to serious medical needs occurs when a prison official knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Harrison v. Barkley*, 219 F.3d 132, 137-38 (2d Cir. 2000) (first quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); and then citing *Hathaway v.*

*Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Deliberate indifference is a high bar because "'[N]ot every lapse in prison medical care will rise to the level of a constitutional violation' . . . rather, the conduct complained of must 'shock the conscience' or constitute a 'barbarous act.'" *Daniels v. Murphy*, No. 11-CV-00286 (SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (first quoting *Estelle*, 429 U.S. at 104-06; and then quoting *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988)).

The court construes Plaintiff's pro se complaint liberally, *see Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), as raising an Eighth Amendment deliberate indifference claim under 42 U.S.C. § 1983 against Dr. Wolf for failure to determine that a single cell is medically necessary and against Warden Burgos and Deputy Warden Soley for failing to provide Plaintiff with a single cell.

To state a deliberate indifference claim, Plaintiff must allege both that his medical need was serious and that Defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). "Objectively, the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (first quoting *Schermerhorn v. Loc. 100, Transp. Workers Union of Am., AFL-CIO*, 91 F.3d 316, 322 (2d Cir. 1996); and then citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). To determine whether a condition satisfies the objective standard, courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment or treatment;" whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (first quoting *McGuckin v.*

*Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992); and then citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

Subjectively, a defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer*, 511 U.S. at 836-37). The defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness . . ." and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (quoting *Salahuddin*, 467 F.3d at 280)). Thus, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 835).

Plaintiff alleges that he has a serious mental health condition which prevents him from safely living with another inmate because it causes him to hurt himself and others. Construed most favorably, Plaintiff's allegations suggest that living with a cellmate exposes him to a substantial risk of harm. For purposes of initial review, the court considers Plaintiff's allegations sufficient to satisfy the objective element. *See, e.g.*, *Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. 2014) ("In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as 'sufficiently serious.'" (collecting cases)).

Turning to the subjective element, with respect to Dr. Wolf, the court rejects any claim to the extent predicated upon a failure to determine that it is medically necessary for Plaintiff to have a single cell because such claim reflects a mere disagreement with Dr. Wolf's medical judgment, which cannot be the basis for a claim of deliberate indifference. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." (citing *Hernandez v. Keane*, 341 F.3d 137, 146-48 (2d Cir. 2003)); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors." (citations omitted)).

It is well established that "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill*, 657 F.3d at 123 (citing *Estelle*, 429 U.S. at 106-07). Assuming that the transition and behavioral management plans attached to the complaint plausibly show that other medical providers determined previously that a single cell was medically necessary for Plaintiff, and that this is sufficient to plausibly allege that Dr. Wolf's medical judgment was unwarranted, such allegation nevertheless does not support a claim of deliberate indifference because there is no allegation that Dr. Wolf acted with a culpable state of mind and even "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness[.]" *Id.* (affirming dismissal of deliberate indifference claim based on denial of pain medication and nerve conduction study notwithstanding plaintiff's

attempt to submit evidence that another doctor subsequently prescribed pain medication and ordered nerve conduction study).

Moreover, accepting as true Plaintiff's allegation that Dr. Wolf told him that because the director of mental health did not allow mental health single cells, she could not support Plaintiff being housed alone even if he needed it, and presuming this was Dr. Wolf's sole basis for finding single cell status unnecessary, these facts plausibly allege only a difference of opinion about treatment and not deliberate indifference. *See, e.g.*, *Brunache v. Annucci*, No. 22-CV-196 (JLS), 2023 WL 146850, at *10 (W.D.N.Y. Jan. 9, 2023) ("Similarly, courts in this Circuit have held that allegations that prison officials failed to prescribe narcotic pain medication pursuant to an alleged policy restricting the prescription of narcotic pain medication did not state a claim under the Eighth Amendment-rather than plausibly allege deliberate indifference, the plaintiffs alleged a difference of opinion about treatment." (first citing *Santos v. Wood*, No. 920CV0421LEKDJS, 2020 WL 3211136, at *8-9 (N.D.N.Y. June 15, 2020); and then citing at *Williams v. Adams*, No. 918CV1041BKSTWD, 2019 WL 350215, at *5 (N.D.N.Y. Jan. 29, 2019))). Plaintiff clearly would prefer that Dr. Wolf find a single cell medically necessary, but no allegations in the complaint suggest Plaintiff was denied or provided inadequate treatment. Thus, Plaintiff's Eighth Amendment deliberate indifference claim for damages against Dr. Wolf in her individual capacity is dismissed.[5]

[5] The court has reviewed Plaintiff's declarations in which he makes additional allegations that Dr. Lee, who is not listed as a defendant in this action, improperly took Plaintiff off his mental health medication. *See* ECF Nos. 14, 15. The court notes that even if properly pleaded, such allegations, without more, likewise would suggest a difference of opinion about treatment and would be insufficient to state a plausible claim for deliberate indifference.

As to Warden Burgos and Deputy Warden Soley, the court notes as an initial matter that Plaintiff fails to clearly allege who is directly responsible for the alleged deprivation.[6] Specifically, Plaintiff's allegations that he told Defendants about his mental health condition and safety concerns surrounding living with another inmate and that Defendants have reviewed his paperwork do not sufficiently link any action of Defendants to the decision to deny single cell status.

Additionally, the court finds that Plaintiff has not plausibly alleged that either defendant was actually aware of a substantial risk that serious harm would result from Plaintiff living with another inmate. *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Plaintiff has alleged that Warden Burgos and Deputy Warden Soley knew that Plaintiff *believes* there is substantial risk of serious harm if he is not housed in a single cell. But knowledge of Plaintiff's unsubstantiated personal belief is insufficient to plausibly allege that Warden Burgos and Deputy Warden Soley recklessly disregarded a substantial risk, especially considering Plaintiff's allegations that his psychologist concluded that Plaintiff did not need single cell status. *See, e.g.*, *Germano v. Cook*, No. 3:19-CV-01204 (JAM), 2019 WL 6486006, at *2 (D. Conn. Dec. 3, 2019) (finding that plaintiff had failed to plausibly allege that officers

---

[6] A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (collecting cases)). This is true with respect to supervisory officials as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability. In the context of the Eighth Amendment, that requires a showing of deliberate indifference on the part of the state-official . . . .").

involved in denying him single-cell status "acted recklessly with respect to [that plaintiff]'s conditions, or with a retaliatory motive, as opposed to negligently or innocently on the basis of divided medical opinion" where the plaintiff's medical treatment team "reached a considered conclusion" that there was not a substantial risk that the plaintiff would suffer serious harm as result of being denied single-cell status).[7]

Plaintiff further alleges that Warden Burgos reviewed Plaintiff's single-cell status paperwork and conferred with Dr. Wolf as well as that Deputy Warden Solely inquired into Plaintiff's cell status as BCC. ECF No. 4, at 6-7. These allegations do not support that Warden Burgos or Deputy Warden Solely failed to take any remedial measures after Plaintiff made them aware of his need for single cell status. While the court must construe the alleged facts in the light most favorable to Plaintiff, the court is not free to speculate about unpleaded facts that might be favorable to him. *See Darby v. Greenman*, 14 F.4th 124, 130 n.6 (2d Cir. 2021) ("While we construe pleaded facts in the light most favorable to the plaintiff, we can draw inferences based only on the facts actually alleged, and we are not free to speculate about unpleaded facts that might be favorable to the plaintiff."). Thus, Plaintiff's Eighth Amendment deliberate indifference claim for damages against Warden Burgos and Deputy Warden Soley in their individual capacities is dismissed.

Plaintiff cannot proceed against any defendant for declaratory or injunctive relief because he has not stated any ongoing violation of his federal or constitutional rights.

---

[7] While not included in the complaint, Plaintiff alleges in his subsequently-filed declarations that "staff" are engaged in a concerted effort to trigger Plaintiff's mental health in hopes that Plaintiff will kill himself or his cellmate so that Plaintiff is prevented from going home and that such concerted effort is in retaliation for Plaintiff's past lawsuits, grievances, and complaints against members of DOC. *See* ECF Nos. 14, 15. Plaintiff fails to allege any facts that support such concerted effort and instead alleges that staff have told Plaintiff that the decision to deny single cell status is because "they need the bed space" and that Plaintiff has not been transferred because he has "been moved around enough." ECF No. 15, at 4. As such, these allegations fail to plausibly allege a retaliatory motive.

*See, e.g.*, *Henderson v. Quiros*, No. 3:21-CV-1078 (VAB), 2021 WL 5359739, at *8 (D. Conn. Nov. 17, 2021).[8] Thus, Plaintiff's official capacity claims are also dismissed.

Finally, to obtain a temporary restraining order, a movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp. 3d 319, 325 (D. Conn. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiff has failed to satisfy this standard because the complaint fails to state a plausible claim for relief and as such Plaintiff has necessarily failed to establish a likelihood of succeeding on the merits of his case. Accordingly, Plaintiff's motion for a temporary restraining order, ECF No. 7, is denied.

## III. <u>ORDERS</u>

For the foregoing reasons, the court orders as follows:

1. The motion for a temporary restraining order, ECF No. 7, is **DENIED** without prejudice to renewal.
2. The complaint, ECF No. 4, is **DISMISSED** without prejudice to Plaintiff filing an amended complaint.
3. If Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable

---

[8] Plaintiff's request for a declaration that Defendants engaged in unlawful conduct is dismissed for the additional reason that "the declaratory relief sought is duplicative" of his other causes of action. *See Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443-44 (S.D.N.Y. 2016). If Plaintiff were to prevail on his Eighth Amendment claim, a judgment in his favor would serve the same purpose as a declaration of unlawful conduct.

claim, he shall file an amended complaint on or before **December 7, 2026.** Any amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the complaint in evaluating the amended complaint. The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.

4. If nothing is filed on the docket by **December 7, 2026,** the case will be closed without further order of the court.
5. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d) provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write “PLEASE NOTE MY NEW ADDRESS” on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.
6. Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court.

**IT IS SO ORDERED** at Hartford, Connecticut, this 5th day of November 2026.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE